FILED

JUL 06 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION ) <br> OF THE UNITED STATES OF AMERICA ) <br> FOR A WARRANT TO OBTAIN ) <br> RECORDS, LOCATION INFORMATION, ) <br> INCLUDING PRECISION LOCATION ) <br> INFORMATION, CELL SITE ) <br> INFORMATION, AND OTHER ) <br> SIGNALING INFORMATION ) <br> ASSOCIATED WITH THE CELLULAR ) <br> TELEPHONE HAVING THE NUMBERS ) <br> (314) 722-6942 ) | No. 4:18 MJ 5191 NAB <br><br> **FILED UNDER SEAL** |

## AFFIDAVIT

Justin Barlow, being duly sworn, deposes and says that he is a Deputy with the United States Marshal Service (USMS) duly appointed according to law and acting as such.

### Introduction

I am a Justin Barlow with the USMS and have been since 2010. The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

Upon information and belief, and as explained in greater detail below, the cellular telephone bearing number (314) 722-6942 (hereinafter the "**subject cellular telephone**"), which is being serviced by Pinger Inc. (hereinafter referred to as "the Service Provider"), has been used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 18, United States Code, Section(s) 2250 (Failure to register as a sex offender)

(hereinafter referred to as "the subject offenses"), by Christopher Ellison, and others known and unknown. Additionally, Ellison was convicted of one count of violating Title 18, U.S.C. 2252A(a)(5)(B) Possession of Child Pornography in the Eastern District of Missouri in cause number 4:09-CR-812 JCH. Following his release from prison, Ellison was placed on supervised release, which commenced on April 12, 2018. The U.S. Probation Office has alleged that Ellison violated the terms and conditions of his supervised release. As a result, a federal arrest warrant was issued for Ellison and his whereabouts are currently unknown.

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

Your affiant further states that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes and the the location and arrest of Ellison..

### Investigation and Probable Cause

Your Affiant is a Deputy United States Marshal (DUSM) and has been so employed since November 2010. Prior to joining the United States Marshal Service I worked as a police officer for the Columbia Illinois Police Department for ten years. As a police officer with Columbia, I

worked as a patrol officer for four years, and an investigator for six years. I have also worked as an investigator with the Major Case Squad of the Greater St. Louis Area assisting in the investigation of approximately twenty homicides. I served as a Special Federal Officer with the Cyber Crime Task Force with the Federal Bureau of Investigations in Fairview Heights, Illinois for five years with duties that included investigating computer crimes such as computer fraud, identity theft, computer intrusion, and child pornography. As a member of the task force I received top secret security clearance through the Federal Bureau of Investigation. I have a Bachelor's degree from Saint Louis University and graduated the Southwestern Illinois College Police Academy in 2000. I also graduated of the United States Marshal Service basic academy and the Criminal Investigator Training Program from the Federal Law Enforcement Training Center, Glynco, GA.

On January 7, 2010, Christopher Ellison; a/k/a "Ginger" was arrested in the Eastern District of Missouri (E/MO) for Possession of Child Pornography. Ellison was convicted of one count of violating Title 18, U.S.C. 2252A(a)(5)(B) Possession of Child Pornography in the Eastern District of Missouri in cause number 4:09-CR-812 JCH. On July 28, 2010, Ellison was sentenced to serve 121 months in the Bureau of Prisons (BOP). Ellison was also placed on federal supervised release for the remainder of his life.

Following his release from prison, Ellison was placed on supervised release, which commenced on April 12, 2018. The U.S. Probation Office has alleged that Ellison violated the terms and conditions of his supervised release. One of the violations listed in the Petition for Warrant submitted by the United States Probation Office (USPO) states, "The defendant shall notify the probation officer at least ten days prior to any change in residence or employment. The

3

supervised release violation petition stated On June 1, 2018, ELLISON told United States Probation Officer Valerie Butler that he would be reporting to the Trans Umbrella Metro Group Shelter, located at 438 Skinker, St. Louis, MO 63130. Butler also stated Ellison was transgender. Butler attempted to locate Ellison at that that address on June 5, 2018 but it was determined that the location is not a shelter but in fact a community center that has group meetings. Ellison's whereabouts are unknown. The petition also stated Ellison violated his supervised release by not complying with all federal, state, and local sex offender registration laws by not providing verification of registration to his probation officer.

In the petition Butler stated Ellison reported to the Butler County Sheriff's Office on June 1, 2018 and closed out his registration. Ellison provided the Butler County Sheriff and the probation officer with his proposed address of 438 N. Skinker, St. Louis, MO 63130. Ellison was told to report to Detective Rick Severino with the St. Louis Metropolitan Police Department to update his sex offender registration paperwork. As of June 26, 2018, Ellison has not reported to the St. Louis Metropolitan Police Department to update his registration. As a result of alleged violations of the terms and conditions of supervised release, on June 6, 2018, the United States District Court issued a federal arrest warrant for Ellison and his whereabouts are currently unknown.

On June 12, 2018, Terri Patterson, a substance abuse mental health counselor in Farmington, MO contacted the USPO office in St. Louis, MO. Patterson stated she saw Ellison as a patient while he was at the facility in Farmington, MO. She recently received several text messages from the phone number of (314) 722-6942 inquiring about Ellison. The texts messages made by the person from the (314) 722- 6942 asked Patterson, "Did you know some chick named

4

ginger?" Notably "Ginger" is an alias for Ellison. The texts continued, " Some dude that picks up homeless girls picked her up, took her home. We never see those girls again. I have her phone. She always talked about Terry. You the only Terry in that phone." Patterson asked the person sending the text message to tell "Ginger" to call Patterson. The person responded to Patterson saying, "I don't think that will happen." The person sending the text stated the guy that took Ginger home was someone they call "Scalper." The Probation office has informed your affiant that they believe the person who texted from number (314) 722- 6942 was actually Ellison.

As a result investigators and I believe that Ellison is using the **subject cellular telephone** and that the device is being used in connection with the commission of offenses involving ongoing violations of violations of Title 18, United States Code, Section(s) 2250 (Failure to register as a sex offender). As noted, a federal arrest warrant was issued for Ellison and his whereabouts are currently unknown. It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in locating and arresting Ellison. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

### Investigative Considerations and Techniques

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A. Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular

account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.  Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

C.  Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D.  Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique

6

identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

      E.    Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

      F.    Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data

or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to

daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

### Conclusion

Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used by Ellison. There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 18, United States Code, Section(s) 2250 and to locate Ellison to arrest him on his outstanding federal warrant.

07/06/18
DATE

Justin Barlow
Deputy United States Marshal

Sworn to and subscribed before me this ___6th___ day of July, 2018.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

9